# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# WHITE PLAINS

| | |
|---|---|
| Peter Hoffman, individually and on behalf of all others similarly situated, | 7:22-cv-00397 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kraft Heinz Foods Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Kraft Heinz Foods Company ("Defendant") manufactures, labels, markets, and sells peach mango liquid concentrate beverage flavoring under its MiO brand ("Product").



2.     Defendant represents that the mango peach taste comes from natural ingredients, through the statement, "Natural Flavor With Other Natural Flavor," on colors reflective of peaches and mangos.



3.     The promise of only natural flavoring appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects.

4.     According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and/or healthy than foods with artificial flavors, and they would pay more for such foods.

5.     Federal and identical state regulations require foods to disclose the source of its flavor. 21 C.F.R. § 101.22.

6.     Natural flavor comes from natural sources, such as "a spice, fruit or fruit juice, vegetable or vegetable juice…or similar plant material." 21 C.F.R § 101.22(a)(3).

7.     Artificial flavor is any substance not obtained from natural sources whose function is to provide flavor. 21 C.F.R § 101.22(a)(1).

8.     Where a food's characterizing, or main, flavors, are from artificial flavors, the front label is required to prominently state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

9.     By identifying the Product as getting its flavor from "Natural Flavor With Other Natural Flavor," and omitting any reference to artificial flavor, on the front and ingredient list, consumers expect only natural flavors.



**INGREDIENTS:** WATER, MALIC ACID, CITRIC ACID, CONTAINS LESS THAN 2% OF NATURAL FLAVOR, SUCRALOSE AND ACESULFAME POTASSIUM (SWEETENERS), POTASSIUM CITRATE, GUM ARABIC, SUCROSE ACETATE ISOBUTYRATE, YELLOW 5, YELLOW 6, RED 40, POTASSIUM SORBATE (PRESERVATIVE).

10.     While the ingredients show the Product contains "Natural Flavor," it also contains "Malic Acid" as the second most predominant ingredient, ahead of "Natural Flavor."

11.     Malic Acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

12.     Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069.

13.     L-Malic Acid occurs naturally in various fruits and provides tartness.

14.     D-Malic Acid does not occur naturally.

15.     DL-malic acid is the racemic mix of D isomer and L isomer.

16.     DL-malic acid is a synthetic chemical manufactured from petroleum.

17.     Defendant adds dl-malic acid to the Product to create and reinforce the tart, sweet,

and fruity taste that consumers associate with peaches and mangos.

18.    Since there are natural and artificial types of malic acid, Defendant is required to tell consumers if it used the artificial version of malic acid, instead of only using the generic name.

19.    Laboratory analysis concluded the Product contains dl-malic acid.

20.    The Product could have used natural, L-Malic Acid, or (more) natural peach and natural mango flavor.

21.    However, Defendant used artificial dl-malic Acid because it was lower-priced and/or more accurately resembled natural peach and natural mango flavor.

22.    DL-malic Acid is not a natural flavor and is used to provide flavoring to the Product.

23.    DL-malic Acid enhances and simulates the Product's peach and mango taste.

24.    Consumers are misled by expecting the taste comes exclusively from natural flavors.

25.    Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

26.    Defendant failed to include the legally-required "Artificially flavored" or "Artificial flavor" disclosure on all of the Products' labels.

27.    First, because the Product contains added flavoring ingredients that simulate and reinforce the characterizing peach and mango flavor, the front label is required to disclose this.

28.    The Product contains and makes other representations which are misleading.

29.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

30.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

31.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32.   Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

33.   The Product is sold for a price premium compared to other similar products, for no less than $3.99 per 1.62 OZ or 24 servings, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36.   Plaintiff Peter Hoffman is a citizen of New York.

37.   Defendant Kraft Heinz Foods Company, is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Allegheny County, Pennsylvania and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

38.   Defendant transacts business within this District through sale of the Product to residents of this District, by third-parties such as grocery stores, big box stores, drug stores, convenience stores, and online.

39.   Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

40.   Venue is in White Plains in this District because a substantial part of the events or

omissions giving rise to these claims occurred in Westchester County, i.e., Plaintiff's purchase and use of the Product and his awareness and/or experiences of and with the issues described here.

Parties

41.    Plaintiff Peter Hoffman is a citizen of New Rochelle, Westchester County, New York.

42.    Defendant Kraft Heinz Foods Company is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Pennsylvania, Allegheny County.

43.    Defendant's predecessor, the Kraft Corporation, was started in 1903 through the sale of cheese door-to-door in Chicago.

44.    Within twenty years, Kraft had become the largest cheese manufacturer in the world.

45.    Over the next century, Kraft would become one of the largest food and beverage companies in the world, and own some of the most iconic brands, like Oscar Mayer and Jell-O.

46.    Kraft was one of the first companies to directly advertise to consumers, not only through color print ads but on tv and radio.

47.    Kraft sponsored tv and radio shows, which created goodwill and trust in consumers.

48.    Kraft is one of America's most trusted brands, and according to some commentators, may be more trusted than the government.

49.    MiO was designed as a modern and convenient alternative to beverage powders, which would add flavor to water.

50.    Defendant developed and heavily marketed MiO to capitalize on the tens of billions of dollars spent annually on water by consumers.

51.    Defendant knew that consumers like Plaintiff were avoiding sugary beverages and artificial flavoring ingredients and consuming more water.

6

52.    MiO, which means "mine," in Italian, is marketed to consumers who value individuality and customization, factors promoted by the internet, i.e., social media and music playlists.

53.    The Product is available to consumers in this District from third-party grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online

54.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including ShopRite, 13 City Pl, White Plains, NY 10601 between October 2021 and November 2021, among other times.

55.    Plaintiff believed the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

56.    Plaintiff bought the Product because he expected it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients because that is what the representations said and implied.

57.    Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

58.    Plaintiff is one of the many Americans who avoid artificial flavor ingredients, believing they are unhealthy and potentially harmful, and prefers natural ingredients.

59.    Plaintiff did not expect that a product would promise only natural flavoring yet contain more artificial flavoring than natural flavoring.

60.    Plaintiff trusted the MiO brand because it is the leader in liquid water flavoring.

61.    Plaintiff was disappointed because he believed the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

62.    Plaintiff bought the Product at or exceeding the above-referenced price.

63.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

64.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

65.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

66.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

67.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar flavored drink concentrates, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

68.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and a
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

69.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

70.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71.    Plaintiff is adequate representative because his interests do not conflict with other members.

72.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

76.    Plaintiff incorporates by reference all preceding paragraphs.

77.    Plaintiff and class members desired to purchase a product that contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

78.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

80.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

81.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

82.    Plaintiff relied on the representations that the Product contained only natural

flavoring ingredients and did not contain artificial flavoring ingredients.

83.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

84.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

85.    Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

86.    As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

87.    In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breach of Contract</u>

88.    Plaintiff entered into a contract with Defendant for purchase of the Product

89.    The terms of the contract provided that the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

90.    Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

91.    Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

92.    The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

93.    Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

94.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

95.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

96.    Defendant's representations affirmed and promised that the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

97.    Defendant described the Product as one which contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

98.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

99.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

100.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

101.  Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

102.  Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

103.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

104.  The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

105.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

106.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

107.  Defendant had a duty to truthfully represent the Product, which it breached.

108.  This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

109. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated their extra-labeling promises and

commitments to quality, transparency and putting its customers first.

110.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

111.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

112.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

113.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

114.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

115.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

116.  Defendant knew of the issues described here yet did not address them.

117.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

118.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 15, 2022

                                     Respectfully submitted,

                                     Sheehan & Associates, P.C.
                                     /s/Spencer Sheehan
                                     60 Cuttermill Rd Ste 409
                                     Great Neck NY 11021
                                     Tel: (516) 268-7080
                                     spencer@spencersheehan.com


                                     Shub Law Firm LLC
                                     Jonathan Shub
                                     Kevin Laukaitis*
                                     134 Kings Hwy E Fl 2
                                     Haddonfield NJ 08033

(856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com
*Pro     Hac     Vice     Application
Forthcoming or Submitted