# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

PETER HOFFMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KRAFT HEINZ FOODS COMPANY,

Defendant.

Case No. 7:22-cv-397-KMK

The Honorable Kenneth M. Karas

## MEMORANDUM IN SUPPORT OF KRAFT HEINZ FOOD COMPANY'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Kraft Heinz Foods Company

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

RELEVANT REGULATORY BACKGROUND .................................................................. 2

ALLEGATIONS OF THE COMPLAINT........................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.      Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial
        Flavor." ................................................................................................................... 4

        A.      Plaintiff has not plausibly alleged that the malic acid in MiO acts as a
                "flavor." ....................................................................................................... 5

        B.      Plaintiff has not plausibly alleged that the malic acid in MiO is "artificial."..... 8

II.     Plaintiff Has Not Plausibly Alleged That the Omission of an "Artificially
        Flavored" Disclosure Is Likely to Mislead Reasonable Consumers............................. 9

III.    Plaintiff Fails to State a Plausible Claim for Breach of Express Warranty. ................. 13

IV.     Plaintiff Fails to State a Plausible Claim for Common-Law Fraud. ............................ 14

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................8, 11

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...................................................................13

*Bimont v. Unilever U.S., Inc.*,
No. 14-7749, 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) ...................................10

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................14

*Cota v. Ralph Lauren Corp.*,
--- F. Supp. 3d ----, 2022 WL 1597631 (E.D. Wis. 2022) .......................................9

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...................................................................15

*Dwyer v. Allbirds, Inc.*,
--- F. Supp. 3d ----, 2022 WL 1136799 (S.D.N.Y. 2022) .......................................10

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).................................................................................10

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................15

*Greene v. Gerber Prods. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) .....................................................................14

*Harris v. Mondelēz Global LLC*,
No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020)....................................10

*Heskiaoff v. Sling Media, Inc.*,
719 F. App'x 28 (2d Cir. 2017) .............................................................................11

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017) ......................................................................8

*Ivie v. Kraft Foods Global, Inc.*,
961 F. Supp. 2d 1033 (N.D. Cal. 2013) ..............................................................7, 8

*Kennedy v. Mondelēz Global LLC,*
No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)......................................................13

*McBeth v. Porges,*
171 F. Supp. 3d 216 (S.D.N.Y. 2016)......................................................14

*Mitchell v. Whole Foods Mkt. Grp., Inc.,*
No. 20-8496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022)..................................12, 13

*Myers v. Wakefern Food Corp.,*
No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)......................................................9

*Nathan v. Whirlpool Corp.,*
492 F. Supp. 3d 747 (S.D. Ohio 2020)......................................................10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
85 N.Y.2d 20 (1995)......................................................10

*Paulino v. Conopco, Inc.,*
No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015)......................................................14

*Quinn v. Walgreen Co.,*
958 F. Supp. 2d 533 (S.D.N.Y. 2013)......................................................14

*Quiroz v. Beaverton Foods, Inc.,*
No. 17-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)......................................................15

*Rodriguez v. It's Just Lunch, Int'l,*
No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)......................................................15

*Santiful v. Wegmans Food Mkts., Inc.,*
No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022)......................................................9

*Stutman v. Chemical Bank,*
95 N.Y.2d 24 (2000)......................................................10

*Turnipseed v. Simply Orange Juice Co.,*
No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022)......................................................9

*Verzani v. Costco Wholesale Corp.,*
432 F. App'x 29 (2d Cir. 2011)......................................................13

*Verzani v. Costco Wholesale Corp.,*
No. 09-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010)......................................................13

*Victor v. R.C. Bigelow, Inc.,*
No. 13-2976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)......................................................12

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ..................................................................5

*Willard v. Tropicana Manufacturing Co.*,
    --- F. Supp. 3d ----, 2021 WL 6197079 (N.D. Ill. 2021).....................................11, 12

*Wynn v. Topco Assocs., LLC*,
    No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .....................................12

**Statutes**

21 U.S.C. § 337(a) ...................................................................................................13

N.Y. G.B.L. § 349...............................................................................................4, 10, 13

N.Y. G.B.L. § 350...................................................................................................4, 10

N.Y. U.C.C. § 2-607 ...............................................................................................14

**Other Authorities**

21 C.F.R. § 101.22 .................................................................................... *passim*

21 C.F.R. § 170.3 ..................................................................................... *passim*

21 C.F.R. § 184.1069 .............................................................................................6, 7

FDA, *Food Labeling; Declaration of Ingredients*, 56 Fed. Reg. 28592 (June 21,
    1991) ..............................................................................................................3, 6

## <u>INTRODUCTION</u>

This lawsuit challenges Kraft Heinz's purported failure to disclose that Mango Peach MiO, a flavored liquid beverage concentrate sold in shelf-stable, pocket-sized containers, contains "artificial flavors." Notably, Plaintiff does not—and cannot—point to any representation that MiO is free of artificial flavors. Plaintiff nonetheless alleges that the presence of malic acid (which he baselessly characterizes as an "artificial flavor") requires Kraft Heinz to disclose the presence of artificial flavors on the labeling and that the omission of this supposed fact from an FDA-mandated regulatory disclosure on the product label is misleading. Plaintiff's lawsuit is entirely implausible.

At the outset, Plaintiff's factual allegations do not establish that the malic acid in MiO acts as a "flavor" or that it is "artificial." Although Plaintiff alleges that Kraft Heinz uses malic acid to provide the "sweet, fruity, and tart taste that consumers associate with mango and peach" (First Am. Compl ("FAC") ¶ 61), that allegation does not plausibly establish that malic acid provides Mango Peach MiO with its "characterizing flavor" and accordingly does not support his claim that it acts as an "artificial flavor." Indeed, given Plaintiff's allegation that malic acid forms part of the flavor profile of virtually *every* fruit, it is utterly implausible that malic acid provides the "characterizing flavor" of *any* fruit—including mangos and peaches.

Moreover, despite Plaintiff's repeated allegation that malic acid increases MiO's tartness, it is far more plausible that malic acid acts as a "flavor enhancer" or a "pH balancer," which are not flavors and are therefore not subject to the FDA's flavor regulations. And even if Plaintiff *had* plausibly alleged that the malic acid in MiO acts as a "flavor," which he has not, his bare-bones allegation that "[l]aboratory analysis concluded the Product contains artificial, DL-Malic Acid" (*id.* ¶ 65) is woefully insufficient to establish that the malic acid in MiO is "artificial"—let alone with the degree of plausibility required by Rule 8.

1

Furthermore, even assuming Plaintiff had plausibly alleged that the malic acid in MiO acts as a "flavor" and that it is "artificial," which he has not, his lawsuit *still* fails because Kraft Heinz does not claim that MiO—a pocket-sized, zero-calorie, shelf-stable liquid beverage concentrate—is free of "artificial flavors."  Plaintiff attempts to circumvent this result by arguing that the FDA-mandated statement "Natural Flavor with Other Natural Flavor" implies that MiO contains "only natural flavors."  FAC ¶¶ 72–73.  But neither that statement nor the omission of an "artificially flavored" disclosure renders the labeling false or misleading.  At the absolute most, it establishes a technical violation of an FDA regulation, which is insufficient to support a consumer fraud claim.

Plaintiff's core theory of deception—as well as his claims for breach of express warranty and common-law fraud—are fatally flawed.  This Court should dismiss his lawsuit with prejudice.

## RELEVANT REGULATORY BACKGROUND

The FDA has issued a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in food products.  If a product label includes a representation about the product's "characterizing flavor" (*e.g.*, strawberry), and the characterizing flavor comes from "natural flavor" derived from the characterizing food ingredient, the regulation directs the manufacturer to state that the product is "strawberry flavored" or "natural strawberry flavored."  21 C.F.R. § 101.22(i)(1)(i).[1]  If the product contains both a characterizing flavor derived from the characterizing ingredient and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to add the nomenclature "with other natural flavor."  *Id.* § 101.22(i)(1)(iii).  But if the food "contains any *artificial* flavor which

---

[1] The FDA's regulatory scheme contemplates that manufacturers will obtain flavoring agents—including both "natural flavors" and "artificial flavors"—from "flavor supplier[s]."  21 C.F.R. § 101.22(i)(4).  While the formulation of these flavoring agents is typically proprietary, the FDA directs flavoring suppliers to certify that a flavoring agent designated as containing no artificial flavor is free of artificial flavors, and it entitles the "flavor user" to rely on this certification.  *Id.*

simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to label the product as "artificially flavored."[2] *Id.* § 101.22(i)(2).

Critically, these regulations apply only to "flavoring agents and adjuvants," which are "[s]ubstances added to impart or help impart a taste or aroma in food." *Id.* § 170.3(o)(12). The regulations do not apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). Because "flavor enhancers are not flavorings," the FDA has made clear that they need not be disclosed on the front label but instead "must be declared in the ingredient list by their common or usual names." FDA, *Food Labeling; Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) (noting that the "FDA's regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

## ALLEGATIONS OF THE COMPLAINT

Kraft Heinz manufactures MiO, a liquid water enhancer. Although MiO comes in a wide variety of flavors (such as Acai Berry Storm, Berry Blast, and Tropical Fusion), this case concerns only one flavor: Mango Peach. In contrast to fresh fruit juices, which come in relatively bulky containers and often require refrigeration, MiO is a shelf-stable, concentrated product that comes in a pocket-sized plastic bottle that consumers can squeeze into plain water to enhance its taste.

Each MiO product, including Mango Peach MiO, derives its signature taste from natural flavors, which Kraft Heinz discloses (along with all other ingredients) in the ingredient line on the back of each package. *See* FAC ¶ 27 (ingredient list). Consistent with the FDA regulations, Kraft

---

[2] Unless otherwise specified, all emphasis is added and all citations and internal quotation marks are omitted.

Heinz accurately states in a mandatory regulatory disclosure on the front of each label that MiO contains "Natural Flavor with Other Natural Flavor."  *See id.* ¶¶ 1, 24.  MiO also contains other ingredients that serve various functional purposes, such as sweeteners and colorings.  *See id.* ¶ 27.

Mango Peach MiO also contains malic acid, which balances the product's acidity and which Kraft Heinz discloses in the ingredient line.  Although Plaintiff admits that malic acid "occurs naturally in various fruits" and "is known for providing . . . tartness" (*id.* ¶ 54), he nonetheless asserts that Kraft Heinz "adds artificial DL-malic acid to the Product to provide, enhance, simulate, and/or reinforce the sweet, fruity, and tart taste that consumers associate with mango and peach."  *Id.* ¶ 61.  Plaintiff accordingly alleges that the mandated regulatory flavor disclosure on the front of the package (*i.e.*, "Natural Flavor with Other Natural Flavor") is "misleading based on the presence of the artificial flavor ingredient DL-Malic Acid."  *Id.* ¶ 72.

Based on this theory of deception, Plaintiff asserts both statutory consumer fraud claims under N.Y. G.B.L. §§ 349 and 350 (as well as unspecified other "State Consumer Fraud Acts") and common-law claims for breach of express warranty and common-law fraud.[3]  *See* FAC ¶¶ 128–158.  Plaintiff asserts these claims on behalf of a putative "New York Class," as well as a putative "Consumer Fraud Multi-State Class" of Virginia and Oklahoma consumers.  *Id.* ¶ 121.

## ARGUMENT

### I.  Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor."

Plaintiff's lawsuit is premised on his allegation that the malic acid in Mango Peach MiO constitutes an "artificial flavor."  That requires him to establish not only that the malic acid in MiO acts as a "flavor," but also that it is "artificial."  His allegations plausibly establish neither.

---

[3] In response to Kraft Heinz's pre-motion conference letter, Plaintiff withdrew his claim "based on the alleged listing of the generic name for malic acid."  ECF No. 17 at 1 n.1 (citing FAC ¶¶ 30–31.)

**A.      Plaintiff has not plausibly alleged that the malic acid in MiO acts as a "flavor."**

To establish that the malic acid in MiO acts as an "artificial *flavor*," Plaintiff must plausibly allege that the malic acid "simulates, resembles, or reinforces the "*characterizing flavor*" of the product.  21 C.F.R. § 101.22(i)(1); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor").  It is not enough for Plaintiff to allege that malic acid may incidentally affect the taste of Peach Mango MiO or "amplify whatever characterizing flavor it has from another source."  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).  Rather, to establish that malic acid acts as an "artificial flavor," Plaintiff must plausibly allege that it "give[s] the product an *original taste*."  *Id.*  Plaintiff has not come close to doing so.

On the contrary, Plaintiff's allegations suggest that Kraft Heinz uses malic acid as a "flavor enhancer"—*i.e.*, a "substance [] added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own."  21 C.F.R. § 170.3(o)(11).  As Plaintiff admits, malic acid "is known for providing sweetness and tartness, among other flavors."  FAC ¶ 54.  But that does not mean that malic acid "provide[s] . . . the sweet, fruity, and tart taste that consumers associate with mango and peach."  *Id.* ¶ 61.  Even if sweetness and tartness may be *components* of the flavor profile of mangos or peaches, that does not mean that either sweetness or tartness is the "primary recognizable flavor" of either fruit, as would be required for it to function as the product's "characterizing flavor."  21 C.F.R. § 101.22(i).

In other words, even if Plaintiff were correct that malic acid increases the tartness or sweetness of MiO, that establishes only that it "enhances" and "modifies" the characteristic flavors of peaches and mangos—which makes it a textbook example of a "flavor enhancer."  21 C.F.R. § 170.3(o)(11).  In fact, the FDA has explicitly recognized that malic acid can be used for this purpose.  *See* 21 C.F.R. § 184.1069(c).  And in drawing a distinction between "flavors" and "flavor

enhancers," the FDA has made clear that flavor enhancers are not subject to the FDA's regulations governing the disclosure of natural and artificial flavors. *See* 56 Fed. Reg. at 28598.

Plaintiff contends that malic acid does not act as a flavor enhancer because "the flavor imparted by malic acid is a core component of mangos and peaches." FAC ¶ 82. But even if that were true, that does not mean that malic acid provides the "primary recognizable flavor" associated with either peaches or mangos. 21 C.F.R. § 101.22(i). Indeed, as Plaintiff admits in his complaint, malic acid is part of the flavor profile of virtually *every* fruit:

| Fruit | Predominant Acid | Secondary Acids |
|-------|------------------|-----------------|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

FAC ¶ 41 (highlighting in FAC). If malic acid comprises part of the flavor profile of every fruit, it cannot serve as the characterizing flavor of any specific fruit—including peaches or mangos.

Similarly, the FDA has also recognized that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c), *see also id.* § 170.3(o)(23) (defining a "pH control agent" as a "substance[] added to change or maintain active acidity or basicity"). And the USDA has likewise recognized that "[t]he main use of synthetic malic acid is pH adjustment." RJN Ex. 1. That use is entirely consistent with Plaintiff's allegation that malic acid "provid[es] . . . tartness." FAC ¶ 54. Plaintiff alleges, with virtually no explanation, that MiO "does not use DL-Malic Acid as a PH balancer because there is no need to change or maintain its active acidity or basicity." *Id.* ¶ 85. But Plaintiff's conclusory, unsubstantiated assertion that there is "no need" for pH balancing is bereft of any factual support (indeed, it is not true) and does not make it plausible that Kraft Heinz uses malic acid as an "artificial flavor" as opposed to a pH balancer.

Many courts have dismissed similar lawsuits absent plausible allegations that the challenged ingredient served the function the plaintiff claimed it did. For example, in *Ivie v. Kraft Foods Global, Inc.*, the court dismissed a lawsuit alleging that the defendant misrepresented its products as containing "natural flavors" when they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042 (alteration in original).

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed

the lawsuit, holding that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the product. *See id.* at 821–22. In reaching this conclusion, the court rejected the plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products," the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept them as true." *Id.* at 822–23.

Here too, Plaintiff has not plausibly alleged that the malic acid in Mango Peach MiO acts as a *flavor*, as opposed to a flavor enhancer or a pH balancer. Even if his allegations were sufficient to establish that malic acid *could* act as a "flavor" (which they are not), the "mere possibility" that malic acid functions as a flavor is not enough to state a plausible claim that MiO contains "artificial flavors." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Absent any plausible allegation that malic acid provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiff's lawsuit.

### B.     Plaintiff has not plausibly alleged that the malic acid in MiO is "artificial."

Even if Plaintiff *had* plausibly alleged that the malic acid in MiO acts as a "flavor" (which he has not), his lawsuit fails because he has not plausibly alleged that the malic acid in MiO is "artificial." Although Plaintiff openly admits that malic acid "occurs naturally in various fruits" (FAC ¶ 54), he nonetheless alleges that "[l]aboratory analysis" confirmed that Mango Peach MiO contains purportedly "artificial" dl-malic acid. *Id.* ¶ 65. But this bare-bones allegation "fails to

provide any details whatsoever about what this laboratory test entailed."[4] *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit filed by Plaintiff's counsel premised on allegedly "artificial" vanilla flavor).

Notably, Plaintiff does not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." *Id.* And many courts have agreed that similarly threadbare allegations about "laboratory testing" are "insufficient to support . . . otherwise conclusory statements as to the ingredients of the Product." *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022); *see also, e.g.*, *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (similar); *cf. Cota v. Ralph Lauren Corp.*, --- F. Supp. 3d ----, 2022 WL 1597631, at *3 (E.D. Wis. 2022) (dismissing lawsuit filed by Plaintiff's counsel challenging thread-count representations and rejecting the plaintiff's reliance on "unspecified laboratory analysis"). Here too, Plaintiff's vague reliance on "laboratory analysis" does not establish that the malic acid in MiO is "artificial"—as Plaintiff must plausibly allege for it to be an "artificial flavor."

## II.   Plaintiff Has Not Plausibly Alleged That the Omission of an "Artificially Flavored" Disclosure Is Likely to Mislead Reasonable Consumers.

While Plaintiff alleges that the FDA-mandated statement "natural flavor with other natural flavors" led him to "believe[] the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients" (FAC ¶ 116), he does not—and cannot—identify any statement on the labeling that Mango Peach MiO is "all natural" or free of artificial flavors.

---

[4] Notably, even though Kraft Heinz raised this argument in its initial request for a pre-motion conference, Plaintiff's FAC contains no more detail about the "[l]aboratory testing" than his initial complaint did. *Compare* Compl. ¶ 19 ("Laboratory analysis concluded the Product contains dl-malic acid."), *with* FAC ¶ 65 ("Laboratory analysis concluded the Product contains artificial, DL-malic acid, instead of natural, L-malic acid.").

Instead, Plaintiff alleges that Kraft Heinz "omi[tted] . . . any reference to artificial flavor on the front and ingredient list" of the product. *Id.* ¶ 73. But Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is "likely to mislead a reasonable consumer"—as he must to prevail on his consumer fraud claims under N.Y. G.B.L. §§ 349 and 350, as well as the other state consumer fraud statutes he invokes in his complaint.[5] *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (applying "consumer protection statutes from forty states and the District of Columbia" and finding that the "critical issue" for each was "whether a reasonable consumer would be misled by Defendant's statement").

Although an omission of material fact can give rise to a consumer-fraud claim under New York law, "[t]here is no obligation under GBL §§ 349 or 350 to provide whatever information a consumer might like to know." *Dwyer v. Allbirds, Inc.*, --- F. Supp. 3d ----, 2022 WL 1136799, at *6 (S.D.N.Y. 2022); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) ("In the case of omissions in particular . . . [§ 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation."). Instead, "[w]hether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Absent a plausible allegation of deception, an omission is not actionable under New York's consumer fraud statutes.

---

[5] Plaintiff's claim for "violations of state consumer fraud acts" purports to assert claims under the consumer fraud statutes of Oklahoma and Virginia. *See* FAC ¶¶ 121, 134–38. These statutes, like N.Y. G.B.L. §§ 349 and 350, both employ a "reasonable consumer" standard. *See, e.g.*, *Bimont v. Unilever U.S., Inc.*, No. 14-7749, 2015 WL 5256988, at *1 (S.D.N.Y. Sept. 9, 2015) (applying "reasonable consumer" standard to Oklahoma consumer fraud claims); *Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747, 760 (S.D. Ohio 2020) (applying "reasonable consumer" standard to Virginia consumer fraud claims).

*See Heskiaoff v. Sling Media, Inc.*, 719 F. App'x 28, 32 (2d Cir. 2017) (holding that the plaintiffs "did not plead an actionable omission" when their complaint failed to articulate "why a reasonable consumer would have been led to believe that Slingbox would always be an ad-free product").

That principle is fatal to Plaintiff's case.  It is beyond dispute that Kraft Heinz does not represent that MiO is "all natural" or free of artificial ingredients.  Moreover, common sense— which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679)—makes clear that a reasonable consumer would not assume that a shelf-stable, pocket-sized liquid beverage concentrate is free of artificial ingredients.  Absent any *affirmative* representation that MiO is "all natural" or free of artificial ingredients, the omission of an "artificial flavor" disclosure would not mislead reasonable consumers into believing that MiO is "natural."

*Willard v. Tropicana Manufacturing Co.*, --- F. Supp. 3d ----, 2021 WL 6197079 (N.D. Ill. 2021), is instructive.  There, the plaintiffs alleged that ten Tropicana juice products were mislabeled because they contained malic acid but failed to disclose that they contained artificial flavor.  *Id.* at *1.  While the court found that plaintiffs had plausibly alleged that the presence of malic acid rendered the phrase "100% Juice Apple Juice" misleading, it dismissed the plaintiffs' claim that malic acid rendered the phrase "Trop 50 Farmstand Apple Juice" misleading.  *See id.* at *12.  In so holding, the court reasoned that the product's name, along with the statement "50% less sugar & calories than apple juice," "undermines Plaintiffs' claims that the name of the Product and the pictures of apples could mislead consumers into believing that the Product contains only natural ingredients."  *Id.*  And the court similarly dismissed the plaintiffs' claim with respect to eight other juices, finding that their allegation "that each Product contains malic acid and fails to disclose that fact on the front labels" did not establish that "a reasonable consumer would be deceived by the labels."  *Id.*

Here too, the labeling of Mango Peach MiO is devoid of any representations that even *arguably* suggest it is "natural" or free of artificial ingredients.  To the contrary, the very nature of the product—a pocket-sized, shelf-stable liquid beverage concentrate that comes in a variety of fruit flavors—makes clear to reasonable consumers that MiO is *not* "natural."  Just as in *Willard*, Plaintiff's allegation that Mango Peach MiO contains malic acid but fails to disclose that it is "artificially flavored" does not plausibly establish reasonable consumer deception.

Plaintiff attempts to plead around this argument by alleging that 21 C.F.R. § 101.22 requires Kraft Heinz to disclose the presence of artificial flavor on the front label.  *See* FAC ¶ 71. But this argument fails, as Plaintiff does not allege—let alone with any degree of plausibility— "that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations."  *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations.").  Absent any plausible allegation that consumers are aware of 21 C.F.R. § 101.22 or that it guides their expectations about the presence of artificial flavors, Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is misleading (setting aside the fact that malic acid is not an "artificial flavor" to begin with).  *See Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20-8496, 2022 WL 657044, at *3 (S.D.N.Y. Mar. 4, 2022) ("Where there is no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards, the federal regulations cited by the plaintiff are insufficient to establish that a consumer is likely to be misled by the alleged lack of conformity with the regulations.").

Finally, even if Plaintiff were correct that Kraft Heinz's alleged failure to disclose the presence of "artificial flavors" violated 21 C.F.R. § 101.22 (which he is not), the Federal Food, Drug & Cosmetic Act ("FDCA") does not permit private plaintiffs to police alleged violations of FDA regulations. *See* 21 U.S.C. § 337(a); *Verzani v. Costco Wholesale Corp.*, No. 09-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) ("The FDCA lacks a private right of action and therefore Verzani cannot rely on it for purposes of asserting a state-law consumer protection claim under G.B.L. § 349."); *Mitchell*, 2022 WL 657044, at *3 ("A plaintiff may not circumvent a lack of a private right of action in one statute by incorporating allegations of its violations into claims pleaded under another statute that does allow for a private right of action.").  It is accordingly irrelevant whether Kraft Heinz's alleged failure to disclose the presence of "artificial flavor" in Mango Peach MiO might violate 21 C.F.R. § 101.22, as Congress has deliberately chosen not to allow private plaintiffs to enforce that regulation.  Absent any plausible allegation that Kraft Heinz's labeling is *deceptive*, Plaintiff cannot state a consumer-fraud claim premised on a purported violation of 21 C.F.R. § 101.22.

## III.  Plaintiff Fails to State a Plausible Claim for Breach of Express Warranty.

When a plaintiff asserts a breach-of-warranty claim premised on allegedly false advertising, that claim necessarily fails if the plaintiff cannot establish that the defendant's advertising was likely to deceive a reasonable consumer. *See, e.g.*, *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) (finding that the "reasonable consumer" standard for purposes of a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) (similar).  Here too, absent any plausible allegation that Kraft Heinz's labeling is misleading, Plaintiff's breach of express warranty claim necessarily fails.

Plaintiff's claim for breach of express warranty also fails for lack of pre-suit notice. "To successfully state a claim for breach of warranty" under New York law, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018); *see* N.Y. U.C.C. § 2-607(3)(a). Failure to do so bars a plaintiff from bringing a claim for breach of express warranty. *See Paulino v. Conopco, Inc.*, No. 14-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a 'buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'") (quoting N.Y. U.C.C. § 2-607(3)(a)).

Here, Plaintiff alleges that he "provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees." FAC ¶ 148. But New York law requires Plaintiff to allege that he *has* provided pre-suit notice—not simply that he may or may not have done so. *See, e.g.*, *Colella*, 348 F. Supp. 3d at 143–44 (dismissing breach of express warranty claim for lack of pre-suit notice); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same). Plaintiff's failure to allege pre-suit notice defeats his breach of express warranty claim.

## IV.   Plaintiff Fails to State a Plausible Claim for Common-Law Fraud.

To state a claim for fraud, "a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016). A plaintiff must *also* "plead scienter, or fraudulent intent." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017).

Plaintiff alleges that "the records Defendant is required to maintain provided it with actual and constructive knowledge of the falsity or deception." FAC ¶ 156; *see also id.* ¶ 158 ("Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."). But even if these boilerplate allegations established that Kraft Heinz

knew its labeling was false (which they do not), "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018).

Similarly, while Plaintiff alleges that Kraft Heinz's alleged failure to disclose the presence of purportedly "artificial flavors" allowed it to sell "more of the Product and at higher prices than it would have in the absence of this misconduct" (FAC ¶ 92), courts have agreed that "a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits'" is also "not sufficient to establish fraudulent intent."[6] *Davis*, 297 F. Supp. 3d at 337 (quoting *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).  Absent any factual allegations suggesting Kraft Heinz acted with fraudulent intent by failing to describe Mango Peach MiO as "artificially flavored" or by labeling the product with an FDA-mandated regulatory disclosure, Plaintiff has not stated a claim for common-law fraud.

## **CONCLUSION**

This Court should dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

Dated:  August 9, 2022

Respectfully submitted,

By: /s/ Dean N. Panos
      Dean N. Panos (*pro hac vice*)
      Alexander M. Smith (*pro hac vice*)

      Attorneys for Defendant
      Kraft Heinz Foods Company

---

[6] *See also Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088 at *10–11 (E.D.N.Y. Mar. 31, 2019) (holding allegation that the defendant had "a motive to misrepresent whether the Product contained preservatives in order to gain a marketing advantage" did not establish scienter); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *6 (S.D.N.Y. Feb. 23, 2010) ("[A] desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud.").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on August 9, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  August 9, 2022                                          By: _____ /s/ Dean N. Panos _____
                                                                                        Dean N. Panos