**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER HOFFMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KRAFT HEINZ FOODS COMPANY,<br><br>        Defendant. | Case No. 7:22-cv-397-KMK<br><br>The Honorable Kenneth M. Karas |

**REPLY IN SUPPORT OF KRAFT HEINZ FOODS COMPANY'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Kraft Heinz Foods Company

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial
        Flavor." ................................................................................................................... 2

        A.      Plaintiff has not plausibly alleged that malic acid acts as a "flavor" in
                MiO. ............................................................................................................ 2

        B.      Plaintiff has not plausibly alleged that the malic acid in MiO is "artificial." ..... 5

II.     Plaintiff Has Not Plausibly Alleged That Kraft Heinz's Labeling Is Misleading. ......... 6

III.    Plaintiff's Breach of Express Warranty and Common-Law Fraud Claims Also
        Fail. ........................................................................................................................ 9

CONCLUSION ................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................1, 10

*Bimont v. Unilever U.S., Inc.*,
  No. 14-7749, 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) ......................................7

*Branca v. Bai Brands, LLC*,
  No. 18-757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ........................................4

*Brown v. Kerry Inc.*,
  No. 20-9730, 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)....................................10

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  354 F. App'x 496 (2d Cir. 2009) ..............................................................................9

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007).......................................................................9

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ....................................................................10

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ....................................................................10

*Dwyer v. Allbirds, Inc.*,
  --- F. Supp. 3d ---- 2022 WL 1136799 (S.D.N.Y. 2022) ..........................................7

*Hayes v. Gen. Mills, Inc.*,
  No. 19-5626, 2021 WL 3207749 (N.D. Ill. July 29, 2021) ......................................4

*Hu v. Herr Foods, Inc.*,
  251 F. Supp. 3d 813 (E.D. Pa. 2017) ....................................................................4, 5

*Ivie v. Kraft Foods Global, Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) .................................................................4, 5

*Kennedy v. Mondelēz Global LLC*,
  No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).......................................9

*Lam v. Gen. Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..................................................................8

*Mitchell v. Whole Foods Mkt. Grp., Inc.*,
  No. 20-8496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022) ........................................................8

*Myers v. Wakefern Food Corp.*,
  No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ....................................................5, 6

*Nathan v. Whirlpool Corp.*,
  492 F. Supp. 3d 747 (S.D. Ohio 2020) ................................................................................7

*Noohi v. Kraft Heinz Co.*,
  No. 19-10658, 2020 WL 5554255 (C.D. Cal. July 20, 2020) .................................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ................................................................................................................7

*Santiful v. Wegmans Food Mkts., Inc.*,
  No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ....................................................6

*Sims v. Campbell Soup Co.*,
  No. 16-668, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ..................................................6

*Turnipseed v. Simply Orange Juice Co.*,
  No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ....................................................5, 6

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ...........................................................................2, 3, 8

*Wach v. Prairie Farms Dairy, Inc.*,
  No. 21-2191, 2022 WL 1591715 (N.D. Ill. May 19, 2022) ....................................................8

*Willard v. Tropicana Mfg. Co.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) ...................................................................................7

*Wynn v. Topco Assocs., LLC*,
  No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ...................................................8

**Other Authorities**

21 C.F.R. § 101.22 ......................................................................................................1, 2, 3, 8

21 C.F.R. § 170.3 ................................................................................................................3, 5

21 C.F.R. § 184.1069 ...............................................................................................................3

FDA, *Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592 (June 21,
  1991) ........................................................................................................................................3

## INTRODUCTION

In his opposition brief, Plaintiff doubles down on his implausible claim that Kraft Heinz misleads reasonable consumers by failing to describe Mango Peach MiO as "artificially flavored." But Plaintiff has not pleaded any facts establishing that the malic acid in MiO is "artificial" or that it functions as a "flavor"—let alone with the plausibility required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Nor has Plaintiff plausibly alleged that the absence of the phrase "artificially flavored" leads reasonable consumers to believe that MiO—a pocket-sized, shelf-stable liquid beverage concentrate that comes in a wide variety of flavors—is free of artificial flavors. These defects foreclose any plausible claim of deception against Kraft Heinz.

To establish that malic acid acts as an "artificial flavor," Plaintiff must plausibly allege that it provides Mango Peach MiO with its "characterizing flavor." 21 C.F.R. § 101.22(i)(2). Plaintiff attempts to satisfy this burden by alleging that Kraft Heinz uses malic acid to provide the "sweet, fruity, and tart taste that consumers associate with mango and peach." First Am. Compl. ("FAC") ¶ 61. But given his allegation that malic acid contributes to the flavor profile of twenty separate fruits, it is utterly implausible that it "simulates, resembles or reinforces the characterizing flavor" of *any* fruit—including peaches and mangoes. 21 C.F.R. § 101.22(i)(2). And even if Plaintiff *had* plausibly alleged that malic acid acts as a flavor (which he has not), he has not alleged any facts to support his conclusory allegation that the malic acid in MiO is "artificial."

Absent any plausible allegation that the malic acid in Mango Peach MiO is "artificial" or that it acts as a "flavor," Plaintiff has not stated a plausible claim that Kraft Heinz fails to disclose the presence of "artificial flavors" in Mango Peach MiO. But even if he *had* plausibly alleged that malic acid acts as an "artificial flavor" (which he has not), his lawsuit still fails because he has not plausibly alleged that Kraft Heinz's labeling misleads reasonable consumers into believing that

MiO is free of artificial flavors.  Critically, Plaintiff does not—and cannot—dispute that Kraft Heinz does not expressly represent that MiO is free of artificial flavors.  Plaintiff attempts to sidestep this fact by arguing that the FDA-mandated regulatory disclosure "Natural Flavor with Other Natural Flavor" implies the absence of artificial flavors.  But neither that statement nor the omission of an "artificially flavored" disclosure renders the labeling false or misleading.  Even if Plaintiff were correct that Kraft Heinz's labeling technically violates an FDA regulation (which he is not), that does not amount to a plausible consumer fraud claim.

Plaintiff's consumer fraud claims, as well as his tag-along claims for fraud and breach of express warranty, are flawed beyond repair.  This Court should dismiss his lawsuit with prejudice.

## ARGUMENT

### I.   Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor."

#### A.   Plaintiff has not plausibly alleged that malic acid acts as a "flavor" in MiO.

The FDA regulation governing the use and labeling of flavoring agents, 21 C.F.R. § 101.22, requires manufacturers like Kraft Heinz to describe their products as "artificially flavored" only if the food "contains any artificial flavor which simulates, resembles or reinforces the *characterizing flavor*."  21 C.F.R. § 101.22(i)(2) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor").  Thus, to establish that malic acid acts as an "artificial flavor" in MiO, Plaintiff must plausibly allege that it "give[s] the product an original taste."  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).

In contrast, courts have made clear that a substance is not a "flavor" simply because it affects the taste of the product or "amplif[ies] whatever characterizing flavor it has from another

source." *Id.*[1]  All that would establish is that malic acid acts as a "flavor enhancer"—*i.e.*, a "substance[] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own"—rather than a flavoring agent whose presence would require Kraft Heinz to label MiO as "artificially flavored."   21 C.F.R. § 170.3(o)(11); *see also* FDA, *Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) ("[F]lavor enhancers are not flavorings.").

Plaintiff asserts that malic acid acts as an artificial flavor because it is a "core component of mangos and peaches" and serves to "impart taste."  Opp'n at 3 (internal quotation marks omitted); *see also* FAC ¶ 82.  But even if Plaintiff were correct that malic acid is a *component* of the flavor of peaches and mangoes, it does not follow that malic acid provides the "primary recognizable flavor" associated with either fruit.  21 C.F.R. § 101.22(i).  To the contrary, as Plaintiff admits in his complaint, malic acid is a component of virtually every fruit's flavor profile—including apples, cherries, grapes, pears, and over a dozen other fruits that taste nothing like peaches or mangoes.  *See* FAC ¶ 41.  If malic acid is a component of *every* fruit's flavor profile, it cannot be the "characterizing flavor" of *any* specific fruit—including peaches and mangoes.  At most, Plaintiff's allegations suggest that malic acid functions as a flavor enhancer, which would not require Kraft Heinz to label Mango Peach MiO as "artificially flavored."

Separate and apart from its use as a "flavor enhancer," the FDA has recognized—and Plaintiff does not dispute—that malic acid can be used as a "pH control agent."  21 C.F.R. § 184.1069(c); *see also id.* § 170.3(o)(23) (defining a "pH control agent" as a "[s]ubstance[] added

---

[1] Plaintiff attempts to distinguish *Viggiano* by arguing that, unlike the acesulfame potassium and sucralose found in the defendant's sodas there, malic acid is part of the flavor profile of peaches and mangoes.  *See* Opp'n at 3.  But this is a false distinction, as Plaintiff's allegations suggest that the malic acid in Mango Peach MiO serves the exact same function as the acesulfame potassium and sucralose in the sodas at issue in *Viggiano*—*i.e.*, to accentuate *other* fruit flavors.

to change or maintain active acidity or basicity").  In fact, the USDA has expressly recognized that "[t]he main use of synthetic malic acid is pH adjustment" (RJN Ex. 1), which is entirely consistent with Plaintiff's allegation that malic acid "provid[es] . . . tartness" to MiO.  FAC ¶ 54.  Plaintiff asserts—without any explanation—that there is no need for malic acid to function as a pH balancer because MiO is a "concentrated, shelf-stable liquid."  Opp'n at 3.  But the fact that MiO is concentrated and shelf-stable has no bearing on whether malic acid serves to adjust the product's acidity as opposed to acting as a flavoring agent.  And if the malic acid serves as a "pH balancer," as opposed to a "flavor," Plaintiff cannot plausibly allege that it functions as an "artificial flavor."

Left without any reasoned basis for his allegation that malic acid acts as a "flavor," Plaintiff points to several district court cases that have held that the functional role of malic acid presents a factual question that cannot be resolved at the pleading stage.  *See* Opp'n at 4 (compiling cases). But Plaintiff does not even *attempt* to articulate the reasoning of these cases, and multiple courts have dismissed similar cases where the plaintiff's factual allegations failed to establish that the challenged ingredient served the function the plaintiff claimed it did.[2]  *See, e.g.*, *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (dismissing lawsuit alleging that potassium citrate and sodium citrate functioned as "artificial flavors" and holding that the plaintiffs' allegations failed to establish that "these ingredients are *flavors*, artificial or otherwise"); *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821–23 (E.D. Pa. 2017) (dismissing lawsuit alleging

---

[2] Moreover, in many of these cases, the labeling affirmatively stated that the product contained "no artificial flavors."  *See, e.g.*, *Hayes v. Gen. Mills, Inc.*, No. 19-5626, 2021 WL 3207749 (N.D. Ill. July 29, 2021); *Noohi v. Kraft Heinz Co.*, No. 19-10658, 2020 WL 5554255 (C.D. Cal. July 20, 2020); *Branca v. Bai Brands, LLC*, No. 18-757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019). These cases are distinguishable from this lawsuit, which is premised on the omission of the statement "artificially flavored" rather than an affirmative representation that Mango Peach MiO contains "no artificial flavors."  *See infra* § II; *see also* MTD at 9–13.

that citric acid acted as an "artificial preservative" and holding that the plaintiff's "arguments and speculations" about its function were "not supported by well-pleaded factual allegations").

Plaintiff asserts that *Ivie* and *Hu* are distinguishable because they rested upon a "chain of speculative assumptions" about the role of the challenged ingredients.  Opp'n at 4 (internal quotation marks omitted).  But that does not distinguish *Ivie* and *Hu* from this case, which similarly hinges upon Plaintiff's speculation that malic acid acts as a flavor as opposed to a flavor enhancer or a pH balancer.  And while Plaintiff notes that *Ivie* and *Hu* involved ingredients other than malic acid (*see* Opp'n at 4–5), that is a distinction without a difference.  Regardless of what ingredient Plaintiff challenges as "artificial," he must plead enough facts to substantiate his claim that this ingredient acts as a "flavor" and does not simply "enhance" or "modify" other flavors.  21 C.F.R. § 170.3(o)(11).  Because Plaintiff has alleged no such facts, he has not stated a plausible claim.

**B.     Plaintiff has not plausibly alleged that the malic acid in MiO is "artificial."**

Leaving aside his failure to allege with plausibility that the malic acid in MiO acts as a "flavor," Plaintiff's lawsuit independently fails because he has not plausibly alleged that the malic acid is "artificial."  Although Plaintiff notes in his opposition brief that "artificial" dl-malic acid is synthesized from petroleum (*see* Opp'n at 6), he admits that malic acid also "occurs naturally in various fruits."  FAC ¶ 54.  And while Plaintiff alleges that "[l]aboratory analysis" confirmed that MiO contains allegedly "artificial" DL-malic acid (*id.* ¶ 65), he provides zero details about what "this laboratory test entailed."  *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit filed by Plaintiff's counsel and noting that the plaintiff did not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *see also Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (similar).  Plaintiff's bare-bones allegations about "laboratory testing" are "insufficient to support

. . . otherwise conclusory statements as to the ingredients of the Product."  *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

Plaintiff asserts that *Myers*, *Santiful*, and *Turnipseed* are distinguishable because the plaintiffs in those cases "inferred the use of artificial vanillin based on a chain of inferences." Opp'n at 6.  That is false.  In all three cases, the plaintiffs alleged that laboratory testing revealed the presence of artificial vanillin, and in all three cases the court found the plaintiffs' allegations lacking in sufficient detail to render their claims plausible.  And while Plaintiff asserts that "numerous courts . . . have denied similar motions where plaintiffs' testing allegations identified" the presence of allegedly "artificial" malic acid (*id.*), he articulates no reason that those decisions or correct or why allegedly "artificial" malic acid is any different than allegedly "artificial" vanillin.[3]  Absent any plausible allegation that the malic acid in the Mango Peach MiO is "artificial," Plaintiff cannot plausibly allege that it is an "artificial flavor."

## II.    Plaintiff Has Not Plausibly Alleged That Kraft Heinz's Labeling Is Misleading.

Even if Plaintiff had plausibly alleged that the malic acid in Mango Peach MiO acts as an "artificial flavor" (which he has not), his consumer fraud claims fail because he has not identified any affirmative representation on the labeling of MiO that implies it is "natural" or free of artificial flavors.  Absent any such labeling claim, no reasonable consumer would assume that a pocket-sized, shelf-stable, liquid beverage concentrate is free of artificial flavors.  The fact that a product "contains malic acid and fails to disclose that fact on the front labels" is insufficient, absent some

---

[3] Moreover, *Sims v. Campbell Soup Co.*—one of the two cases Plaintiff relies on—is inapposite, as the defendant did not challenge the plaintiff's allegation that the malic acid in its products was "artificial."  *See Sims*, No. 16-668, 2018 WL 7568640, at *4 (C.D. Cal. Sept. 24, 2018) (summarizing the defendant's arguments for dismissal).

*other* affirmative misrepresentation, to establish that "a reasonable consumer would be deceived by the labels."[4] *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 834 (N.D. Ill. 2021).

Plaintiff asserts that his omission-based claim is viable because he and other consumers seek to avoid "artificial flavors." *See* Opp'n at 5–6. But even if that were true, that does not mean it would be reasonable for those consumers to *assume* that a liquid beverage concentrate is free of artificial flavors absent an express representation to that effect. Nor does Plaintiff articulate any reason that Kraft Heinz would be obligated to disabuse consumers of their mistaken assumptions about the presence or absence of artificial flavors. That is fatal to his lawsuit, as New York law "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *see also Dwyer v. Allbirds, Inc.*, --- F. Supp. 3d ---- 2022 WL 1136799, at *6 (S.D.N.Y. 2022) ("There is no obligation under GBL §§ 349 or 350 to provide whatever information a consumer might like to know.").

Plaintiff attempts to circumvent this result by arguing that the FDA-mandated statement "Natural Flavor with Other Natural Flavors" amounts to an affirmative representation that Mango Peach MiO is free of artificial flavors. *See* Opp'n at 5. But this argument reflects a fundamental misunderstanding of the FDA's flavor regulations, which require the use of this regulatory disclosure if a product "contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing

---

[4] Plaintiff does not dispute that his consumer fraud claims under N.Y. G.B.L. §§ 349 and 350 are subject to a "reasonable consumer" standard. And while Plaintiff faults Kraft Heinz for addressing the claims of the "Consumer Fraud Multi-State Class" in a footnote (*see* Opp'n at 8), he does not actually dispute that his claims on behalf of Oklahoma and Virginia consumers are subject to the same "reasonable consumer" standard as his New York consumer fraud claims. *See Bimont v. Unilever U.S., Inc.*, No. 14-7749, 2015 WL 5256988, at *1 (S.D.N.Y. Sept. 9, 2015) (Oklahoma); *Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747, 760 (S.D. Ohio 2020) (Virginia).

flavor." 21 C.F.R. § 101.22(i)(1)(iii). And courts have consistently agreed that "FDA regulations permit a food product to be labeled as containing 'natural flavors' even if the ingredients themselves are not all natural." *Viggiano*, 944 F. Supp. 2d at 889; *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102–03 (N.D. Cal. 2012) ("[U]nder 21 C.F.R. § 101.22(i), a product may be labeled as 'fruit flavored' or 'naturally flavored,' even if it does not contain fruit or natural ingredients. So long as that product 'contains natural flavor' which is 'derived from' the 'characterizing food ingredient,' it will not run afoul of the regulation.").

Here too, Plaintiff does not—and cannot—dispute that Mango Peach MiO contains natural flavor derived from its characterizing fruit ingredients and other natural flavor that simulates, resembles, or reinforces each product's characterizing flavor. *See* FAC ¶ 27 (ingredient line including "Natural Flavor"). Even if Plaintiff were correct that MiO contains artificial flavors (which he is not), it is not remotely misleading for Kraft Heinz to disclose that its products contain natural flavor or to use an accurate regulatory disclosure that is mandated by federal law.

It is similarly irrelevant whether the FDA regulations require manufacturers to label products as "artificially flavored" if they contain artificial flavor. Plaintiff concedes that New York law does not provide a private right of action to enforce the FDA's food labeling regulations. *See* Opp'n at 7–8; MTD at 13. Moreover, Plaintiff has not alleged any facts suggesting that "reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations."[5] *Wynn v. Topco Assocs., LLC*,

---

[5] *See also, e.g.*, *Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20-8496, 2022 WL 657044, at *3 (S.D.N.Y. Mar. 4, 2022) ("Where there is no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards, the federal regulations cited by the plaintiff are insufficient to establish that a consumer is likely to be misled by the alleged lack of conformity with the regulations."); *Wach v. Prairie Farms Dairy, Inc.*, No. 21-2191, 2022 WL 1591715, at *5 (N.D. Ill. May 19, 2022) ("Insofar as plaintiffs' assertion is meant to show that a reasonable

No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021).  Instead of disputing this fact, Plaintiff asserts that consumers' lack of familiarity with the FDA's flavor regulations weighs in favor of requiring manufacturers to identify the presence of artificial flavor.  *See* Opp'n at 7–8. But this makes no sense: if consumers do not interpret the absence of an "artificially flavored" disclosure to suggest that a product is free of artificial flavors, the fact that the FDA regulations might require an "artificially flavored' disclosure has no bearing on how reasonable consumers interpret the labeling of Mango Peach MiO.  Plaintiff does not cite a single case that endorses this illogical argument, and this Court should not be the first to do so.

## III.   Plaintiff's Breach of Express Warranty and Common-Law Fraud Claims Also Fail.

Plaintiff does not dispute that, when a plaintiff asserts a breach-of-warranty claim premised on allegedly false advertising, that claim necessarily fails if the plaintiff cannot establish that the defendant's advertising was likely to deceive a reasonable consumer.  *See, e.g.*, *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020).  And absent a "material false statement or omission," Plaintiff cannot prevail on his claim for common-law fraud.  *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (citations and internal quotation marks omitted).  Because Plaintiff has not plausibly alleged that Mango Peach MiO contains "artificial flavors" or that the omission of an "artificially flavored" disclosure is likely to deceive a reasonable consumer, these claims necessarily fail.  But these two claims also fail for independent reasons.

Express Warranty.  New York law requires a plaintiff to provide pre-suit notice *before* bringing a claim for breach of express warranty.  *See* MTD at 14.  Plaintiff asserts that he notified Kraft Heinz of its alleged breach "through filing this action in June 2022."  Opp'n at 9.  But that

_____

consumer would be aware of these regulations, and thus would expect defendant's Product to be labeled as 'artificially flavored,' the FAC lacks factual allegations to support such an argument.").

does not show he provided "notice *before* filing this lawsuit," as New York law requires. *Brown v. Kerry Inc.*, No. 20-9730, 2021 WL 5446007, at *8 (S.D.N.Y. Nov. 22, 2021) (emphasis added).

Plaintiff then asserts that "notice requirements for breaches of warranty have long been jettisoned in New York state for retail sales." Opp'n at 9 (citation and internal quotation marks omitted). But the "minority of New York State cases" that have recognized this exception have applied it "exclusively . . . where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018) (citation omitted). Absent any allegation that Plaintiff suffered physical harm, this supposed exception cannot apply.

<u>Common-Law Fraud</u>. Although Plaintiff asserts that he has pleaded his common-law fraud claim with sufficient particularity under Rule 9(b), he largely ignores Kraft Heinz's argument that the complaint fails to plead the scienter necessary to state a claim for fraud. *See* MTD at 14–15. And even if Plaintiff were correct that Rule 9(b)'s heightened pleading standard does not apply to allegations of scienter (*see* Opp'n at 9), that does not relieve him of the burden of pleading "factual allegation[s] sufficient to plausibly suggest [Kraft Heinz's] state of mind." *Iqbal*, 556 U.S. at 663. Neither Plaintiff's generalized allegations that Kraft Heinz knew its representations were false nor his conjecture that Kraft Heinz had a profit motive to mislead consumers amount to a plausible allegation of fraudulent intent. *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (emphasizing that neither "[t]he simple knowledge that a statement is false" nor a defendant's "generalized motive to satisfy consumers' desires or increase sales and profits" is "sufficient to establish fraudulent intent") (citation and internal quotation marks omitted). Absent a plausible allegation of scienter, this Court should dismiss Plaintiff's common-law fraud claim.

## **CONCLUSION**

This Court should dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

Dated:  September 22, 2022          Respectfully submitted,

By: /s/ Dean N. Panos
     Dean N. Panos (*pro hac vice*)
     Alexander M. Smith (*pro hac vice*)

     Attorneys for Defendant
     Kraft Heinz Foods Company

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on

September 22, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect

electronic service on all parties and attorneys registered to receive notifications via the CM/ECF

system.

Dated:  September 22, 2022                              By: _____/s/ Dean N. Panos_____
                                                                            Dean N. Panos